## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICK ALBERT BYERS, JR., | * | |
| Petitioner, | * | Civil Action No. RDB-12-2348 |
| v. | * | Criminal Action No. RDB-08-0056 |
| UNITED STATES OF AMERICA | * | |
| Respondent. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Following a capital trial, Petitioner Patrick Albert Byers, Jr. ("Petitioner" or "Byers") was convicted by a jury of several charges stemming from the murder of Carl Lackl ("Lackl"). Although Byers was in state prison at the time of Lackl's murder, the Government established at trial that he used a contraband cellphone to arrange the murder in order to prevent Lackl from testifying against him in his state trial for the 2006 murder of Larry Haynes ("Haynes"). He was convicted of conspiracy to use a facility of interstate commerce in commission of a murder for hire, in violation of 18 U.S.C. § 1958(a) (Count One); use of a facility of interstate commerce in the commission of a murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Count Two); conspiracy to murder a federal witness, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Three); murder of a federal witness, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Four); three charges related to the use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c), 924(j), 924(o) (Counts Five, Six, and Seven); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Eight). (*See* Jury Verdict, ECF No. 316.)

On May 4, 2009, the jury failed to reach a unanimous verdict as to the death penalty. (*See* Notice of Intent to Seek the Death Penalty, ECF No. 94; Special Verdict, ECF No. 339.) This Court sentenced Byers to four consecutive terms of life imprisonment with no possibility of parole. (Judgment, ECF No. 340.) Specifically, this Court sentenced Byers to:

- Concurrent life sentences on Counts 1 and 2;

- Concurrent life sentences on Counts 3 and 4, to run consecutive to Counts 1 and 2;

- A life sentence on Count 6, to run consecutive to Counts 1 through 4; and

- A life sentence on Count 5, to run consecutive to Counts 1, 2, 3, 4, and 6;

(*Id.* at 3.)[1] Accordingly, the life sentences in Counts One, Two, Five, and Six are independent of the life sentences imposed in Counts Three and Four.

The United States Court of Appeals for the Fourth Circuit affirmed Byers' convictions on May 6, 2011. *See United States v. Byers*, 649 F.3d 197, 201 (4th Cir. 2011). Thereafter, Byers filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. (ECF No. 412; *see also* Supplement, ECF No. 424.) On September 16, 2015, this Court denied that motion and denied a certificate of appealability. (Sept. 6, 2015 Mem. Op., ECF No. 464; Sept. 16, 2015 Ord., ECF No. 465.) In the following years, Petitioner has twice requested authorization from the Fourth Circuit to file successive § 2255 motions, and twice been denied. (*See* Appeal No. 18-326, ECF No. 557-2; Appeal No. 21-292, ECF No. 557-4.)

On March 22, 2022, this Court construed Byers' *pro se* Motion for Discovery (ECF No. 474) as a Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b),

---

[1] Petitioner also received a 20-year sentence on Count 7, to run consecutively with Count 5, and a 10-year sentence on Count 8, to run consecutively with Counts 5 and 7. (*Id.*)

and granted this motion in part. (*See* Mar. 22, 2022 Mem. Ord. 8, ECF No. 534.) This Court reopened Byers' original § 2255 Motion (ECF No. 412), permitting him to amend this motion and challenge his convictions as to Counts Three, Four, and Eight, and appointing counsel to assist him. (Mar. 22, 2022 Mem. Ord. 6–7.) Currently pending are Byers' Amended Motion to Vacate Sentence (ECF Nos. 543, 412), Motion for Home Confinement (ECF No. 553); Motion for Compassionate Release (ECF No. 510); Motion for Review of Detention Order (ECF No. 513); and Motion for Deficient Service (ECF No. 460). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, Byers' Amended Motion to Vacate Sentence (ECF Nos. 543, 412) is hereby **DISMISSED** in part and **DENIED** in part. His remaining motions (ECF Nos. 460, 510, 513, 553) shall be addressed separately.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may move to vacate, set aside, or correct his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose the sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) "the sentence 'is otherwise subjected to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of a § 2255 collateral attack is far narrower than an appeal, and "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate cause and prejudice, or actual innocence. *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010); *see Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339 (1994); *see also United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999).

## ANALYSIS

The facts of this case and the evidence produced at trial were reviewed in the Fourth Circuit's opinion denying Byers' appeal, *see United States v. Byers*, 649 F.3d 197, 201–06 (4th Cir. 2011), and this Court's opinion denying his first collateral attack, *see Byers v. United States*, Civ. No. RDB-12-2348, Crim. No. RDB-08-0056, 2015 WL 5450179, at **1–5, 8–11 (D. Md. Sept. 16, 2015). This Court reopened Byers' § 2255 motion and granted leave to amend in light of the Supreme Court's intervening decision in *Fowler v. United States*, 563 U.S. 668 (2011), and the involvement of former Baltimore Police Sergeant Wayne Jenkins, who has since been convicted of federal racketeering, robbery, obstruction of justice, and other related charges arising out of his participation in the Baltimore Police Department's disgraced Gun Trace Task Force. (Mar. 22, 2022 Mem. Ord. 6.) This motion challenges Byers' convictions under Counts Three, Four, and Eight in light of these developments, presents several additional arguments against his remaining convictions, and seeks further leave to amend.

Although this Court authorized Byers to amend his Motion to Vacate Sentence (ECF No. 412) and introduce new challenges against Counts Three, Four, and Eight, that narrow

mandate does not necessarily suggest that Petitioner's new claims would be successful. After careful review of the parties' arguments, this Court finds that many of Petitioner's claims are untimely, while others are jurisdictionally barred. In the alternative, this Court concludes that each of Petitioner's arguments fail on the merits. This Court has already determined that the pre-*Fowler* jury instructions used in this case were harmless. *See Goodman v. United States*, Civ. No. RDB-12-2972; Crim. No. RDB-08-0056; 2015 WL 5735364, at *5 (D. Md. Sept. 8, 2015). Additionally, Petitioner fails to demonstrate that Jenkins committed perjury in his testimony, or that there is any reasonable probability this alleged perjury affected the verdict in this case. Accordingly, Byers' Amended Motion to Vacate (ECF No. 543, 412) is hereby **DENIED** in part and **DISMISSED** in part.

## I.  Jurisdiction to Consider Successive Habeas Claims

As an initial matter, the Government contends that this Court lacks jurisdiction to consider Byers' arguments, as the instant motion constitutes an unauthorized habeas petition. (*See* Gov't's Resp. 2, 8–12, ECF No. 557.) The Supreme Court has held that a collateral motion that "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim on the merits" is properly recharacterized as a successive habeas petition. *Gonzales v. Crosby*, 545 U.S. 524, 532 (2005); *accord United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003), *abrogated in part on other grounds by United States v. McRae*, 793 F.3d 392 (4th Cir. 2015) ("[A] motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application."). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2255 to require appellate precertification for successive habeas petitions:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *see also* § 2244(b)(3)(A); *accord In re Vial*, 115 F.3d 1192, 1197–98 (4th Cir. 1997) (en banc); *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (describing effects of AEDPA). Accordingly, absent pre-filing authorization from the Court of Appeals, this Court lacks jurisdiction to consider a second or successive habeas motion. *Winestock*, 340 F.3d at 205.

The Government correctly observes that Petitioner's challenges to Counts Three, Four, and Eight constitute direct attacks on his convictions and sentences that would ordinarily trigger the jurisdictional bar against unauthorized successive filings. (*See* Gov't's Resp. 10–11.) However, habeas proceedings under 28 U.S.C. § 2255 qualify as civil actions and are subject to the Federal Rules of Civil Procedure "to the extent that they are not inconsistent with the Habeas Corpus Rules." *Woodford v. Garceau*, 538 U.S. 202, 208 (2003). Among them, Rule 60(b) authorizes a court to "relieve a party or its legal representatives from a final judgment, order, or proceeding" in certain circumstances, such as the emergence of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial;" "fraud . . . misrepresentation, or other misconduct of an adverse party;" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "[A] motion under Rule 60(b)(6) may not be granted absent 'extraordinary circumstances.'" *Cf. Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004) (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 n.2 (4th Cir. 2000)).

In granting Petitioner's Rule 60(b) motion, this Court concluded that Byers' mandatory

life sentences and lack of legal representation constitute "extraordinary circumstances," and that Jenkins' rampant perjury in the Gun Trace Task Force and the Supreme Court's decision in *Fowler* provide appropriate grounds for relief from this Court's final judgment. (*See* Mar. 22, 2022 Mem. Ord. 6–7.) Accordingly, this Court modified its final judgment on Petitioner's original § 2255 motion and authorized him to amend that motion to introduce challenges to Counts Three, Four, and Eight. (*Id.* at 8–9.) The effect of this decision is that Byers' original § 2255 petition (ECF No. 412) is once again pending before this Court, as supplemented by the additional arguments presented in his amended motion (ECF No. 543). In these unique circumstances, Byers' challenges to Counts Three, Four, and Eight are not successive—they are a component of his original, reopened § 2255 motion, which this Court retains jurisdiction to consider. Accordingly, this Court will consider the merits of Byers' challenges to Counts Three, Four, and Eight.[2]

However, Petitioner raises several additional challenges in his motion that exceed the scope of this Court's Rule 60(b) relief. These include (1) a challenge to Counts Five, Six, and Seven based on an argument that murder for hire and conspiracy to commit murder for hire do not constitute "crime[s] of violence" within the meaning of 18 U.S.C. §§ 924(c), 924(j), and 924(o) (Pet.'s Amended Mot. 21–22, ECF No. 543); (2) a challenge to Counts Four and Five, asserting that these counts are duplicative in violation of the Double Jeopardy Clause, (*id.* at 23 n.21); and (3) a challenge to *all* of Byers' remaining convictions based on Jenkins' alleged perjury, (*id.* at 20–21). These arguments raise additional, substantive attacks against Byers'

---

[2] Although this Court granted Rule 60(b) relief, this Court's denial of Byers' ineffective assistance of counsel claims remains in full effect.

convictions, and constitute unauthorized, successive habeas petitions under 28 U.S.C. § 2255. *Cf. Winestock*, 340 F.3d at 207 ("[A] motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider."). Accordingly, to the extent Petitioner's Amended Motion to Vacate raises these arguments, it is hereby **DISMISSED** for lack of jurisdiction.[3]

## II.    Counts Three and Four – *Fowler v. United States*

In addressing the implications of the Supreme Court's opinion in *Fowler v. United States*, 563 U.S. 668 (2011), it is important to note that the *Fowler* decision affects only Counts Three and Four. The Petitioner's terms of life imprisonment on Counts One, Two, Five, and Six are in no way affected by that opinion. Counts One and Two relate to Petitioner's use of a facility of interstate commerce in relation to a murder for hire, in violation of 18 U.S.C. § 1958(a). Counts Five and Six relate to Petitioner's use of a firearm in the commission of a crime of violence, in violation of 18 U.S.C. § 924(c), and to causing the death of another through the use of a firearm in the commission of a crime of violence, in violation of 18 U.S.C. § 924(j). These convictions will remain intact regardless of the resolution of Byers' *Fowler* claims.

In Counts Three and Four, Byers was convicted of murdering a federal witness (Count Four); and conspiring to commit this offense (Count Three), each in violation of 18 U.S.C. §

---

[3] Petitioner also seeks permission to amend his motion further to introduce these challenges. (Pet.'s Amended Mot. 20–22.) That request is denied. Byers' challenge to Counts Four and Five under the Double Jeopardy Clause is untimely, as it rests on a Fourth Circuit case that was decided in 2020, well over one year ago. *See United States v. Palacios*, 982 F.3d 920, 925 (4th Cir. 2020). His argument that murder-for-hire is not categorically a "crime of violence" is foreclosed by Fourth Circuit authority holding otherwise. *United States v. Runyon*, 994 F.3d 192, 200–201 (4th Cir. 2021). And, as discussed below, Petitioner fails to show that Jenkins committed perjury in this case, or that the alleged perjury had an effect on the verdict.

1512(a)(1)(C). These offenses require that the killing be committed with intent to prevent the victim from communicating with federal law enforcement officers or a federal judge regarding the commission or potential commission of a federal offense. *See* 18 U.S.C. § 1512(a)(1)(C). At the time of Byers' March 2009 trial, the Fourth Circuit's opinion in *United States v. Harris*, 498 F.3d 278 (4th Cir. 2007), *abrogated by Fowler v. United States*, 563 U.S. 668 (2011), defined this intent element broadly, providing that "[s]o long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established." 498 F.3d at 286.

However, in *Fowler v. United States*, 563 U.S. 668 (2011), decided twenty days after the Fourth Circuit affirmed Byers' convictions,[4] the Supreme Court held that the government must instead show "a reasonable likelihood that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." 563 U.S. at 677. As the Court explained:

> [W]here the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer.

563 U.S. at 677–78 (emphasis in original). This "reasonable likelihood" standard "requires that the government establish the federal nexus by presenting evidence showing that a communication with a federal officer was more than a possibility but less than a probability,

---

[4] The Fourth Circuit has held that *Fowler* applies retroactively to cases on collateral review. *United States v. Smith*, 723 F.3d 510, 515 (4th Cir. 2013) ("[W]e agree that the *Fowler* right has been 'newly recognized' by the Supreme Court and that it is retroactively applicable to cases on collateral review.").

so long as the chance of the communication was not remote, outlandish, or simply hypothetical." *United States v. Smith*, 723 F.3d 510, 518 (4th Cir. 2013).

Byers claims that his convictions under Count Three and Count Four do not satisfy this standard. (Pet.'s Amended Mot. 4–6.) Petitioner argues that he was not charged with a federal offense until after Lackl was killed, that the government did not present any evidence of an ongoing federal investigation, and that the prosecution's law enforcement witnesses were "*non-federal* officials—from the Baltimore City or Baltimore County Police Departments." (*Id.* at 5 n.4 (emphasis in original).) Additionally, while Byers' conduct unrelated to Lackl's murder ultimately amounted to several federal offenses, he argues that "[t]here was no evidence at trial that other such criminal conduct made it 'reasonably likely' that what Lackl told the local authorities would be reported to federal authorities." (*Id.* at 13.)

As an initial matter, Petitioner's *Fowler* challenge is untimely. In enacting AEDPA, Congress imposed "demanding strictures" on the availability of habeas relief in order "to advance the finality of criminal convictions." *Hyman v. Hoekstra*, 41 F.4th 272, 290 (4th Cir. 2022) (quoting *Mayle v. Felix*, 545 U.S. 644, 662 (2005)). Among such limitations, 28 U.S.C. § 2255(f) provides that a habeas petitioner must file their claims within one year of any of the following triggering events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The Fourth Circuit affirmed Byers' convictions on May 6, 2011, and the Supreme Court decided *Fowler* on May 26, 2011. Byers filed his original § 2255 motion on August 7, 2012, (*see* ECF No. 412), his supplement on February 7, 2013, (*see* ECF No. 424), and his amended motion on July 11, 2022, (*see* ECF No. 543). Each of these dates falls outside the one-year timeframe prescribed by 28 U.S.C. § 2255(f).

None of the exceptions to this limitations period apply. First, to relate back to the date of Byers' original filing, his amendments must "arise out of the same conduct, transaction, or occurrence set forth in the original pleading." *United States v. Pittman*, 209 F.3d 314, 317–18 (4th Cir. 2000). Petitioner's earlier motion raised only ineffective assistance of counsel claims and did not present any arguments based on the intervening effects of *Fowler*. *Cf. id.* (holding that petitioner's amended claim of ineffective assistance of counsel based on a failure to appeal did not relate back to original § 2255 motion challenging the district court's jurisdiction and the propriety of a sentence enhancement). Second, "[t]o be entitled to equitable tolling, [Byers] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Petitioner's only evidence of diligence is the requests for certification he presented to the Fourth Circuit in 2018 and 2021, well beyond one year after *Fowler* was decided. (Appeal No. 18-326; Appeal No. 21-292.) Petitioner fails to adduce any evidence that any "extraordinary circumstance[s]" prevented him from filing these requests and pursuing relief earlier. *Lawrence*, 549 U.S. at 336.

Third, Byers has not established that he is "actually innocent" of Counts Three and Four on account of the *Fowler* standard. (*See* Gov't's Resp. 13–14.) "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *accord Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in [the event of] procedural default."). However, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup v. Delo*, 513 U.S. 298, 397 (1995). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316. Byers offers no new evidence suggesting that he is "actually innocent" of Counts Three and Four and raises a claim only of "legal insufficiency"—that is, an argument that the evidence presented at trial is insufficient to meet the *Fowler* federal nexus standard. This is insufficient to bypass the limitations period imposed by § 2255(f).

Even if this Court were to reach the merits, Byers' *Fowler* claim is unavailing. In *United States v. Smith*, 723 F.3d 510 (4th Cir. 2013), a defendant appealing his conviction for federal witness tampering by challenging the district court's use of a pre-*Fowler* jury instruction for the federal nexus element. 723 F.3d at 511–12. Emphasizing that the effects of a pre-*Fowler* jury

instruction must be analyzed for harmless error, the Court concluded that "[w]hile the presence of drug trafficking alone might not be enough to satisfy the 'reasonable likelihood' standard . . . the federal nature of drug trafficking, plus 'additional appropriate evidence' does meet the standard." *Id.* at 518 (quoting *United States v. Bell*, 113 F.3d 1345, 1349 (3d Cir. 1997)). In Smith's case, the "evidence satisfying the 'reasonable likelihood' standard was substantial." *Id.* The Government had shown that the DEA's "biggest source of information" was the Baltimore City Police Department, and that the two agencies were closely collaborating in drug enforcement task forces. *Id.* Moreover, the victim had been "complaining about large scale gang activity and drug trafficking in her neighborhood," and a DEA special agent testified that "even street level drug cases come to the attention of the DEA." *Id.*

This Court has already found that the evidence offered in this case is sufficient under *Fowler*, and applied *Smith* to functionally identical claims raised by Byers' co-defendant, Frank Goodman. *See Goodman v. United States*, Civ. No. RDB-12-2972; Crim. No. RDB-08-0056; 2015 WL 5735364, at *5 (D. Md. Sept. 8, 2015). As this Court already observed, the evidence against both co-defendants is sufficient to satisfy the *Fowler* standard:

> Just as in the *Smith* case, the evidence in this case against Byers and Goodman was substantial and satisfied the "reasonable likelihood" standard set forth in the *Fowler* case. The evidence at trial indicated possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Furthermore, the evidence at trial indicated prior acts of obstruction of justice, firearm violations, and drug trafficking. As the Supreme Court noted in the *Fowler* case, the Government must merely establish the "likelihood of communication to a federal officer," which must have been "more than remote."
>
> As in the *Smith* case, the evidence in this case involved extensive drug activity, the type of which is addressed jointly by the Drug Enforcement Administration with the Baltimore City Police Department. Accordingly, the pre-*Fowler* jury instructions in this case were harmless error just as they were in the *Smith* case. As the Fourth Circuit recognized in *Smith*, the pre-*Fowler* jury instructions did

13

not have a substantial and injurious effect or influence in determining the jury's verdict. Consequently, these instructions constitute harmless error.

*Id.* at *5 (quoting *Fowler*, 563 U.S. at 578). As the evidence against Goodman suffices equally against Byers, the same reasoning applies, yielding the same result. Accordingly, Byers' Motion to Vacate (ECF Nos. 412, 543) is **DENIED** as to Counts Three and Four.

### III.   Count Eight – Allegations of Perjury by Sergeant Wayne Jenkins

In Count Eight, Byers was convicted of possession of a firearm by a prohibited person, arising from his possession of a firearm on the day Larry Haynes was murdered. (*See* Jury Verdict 3.) At trial, Baltimore Police Department Sergeant Wayne Jenkins testified that Byers operated a drug shop near the location Haynes was murdered, (Apr. 7, 2009 Tr. 114–16, ECF No. 380), and that Byers was an informant who had previously provided him information on drug dealers in the area, (*id.* at 111). According to Jenkins, on the day of the Haynes murder, Byers called him to report the shooting and later met with him to recount the incident:

> [Byers] explained to me that he heard from a friend, which I was also trying to find out who that friend was. He explained to me he had heard from a friend that he just saw a shooting take place about a big tall black male [who was at least six feet tall] wearing all black and by the garages. He also informed me his friend told him that a handgun was thrown on the roof.
>
> I believe I was being played, I was being used as an alibi, being used as a scapegoat. . . . Somebody who was just accused of murdering someone used me[,] [a] narcotics detective in Baltimore City, . . . [to] try to cover it to make it look like he's cooperating with the police [regarding a murder committed by someone else].

(*Id.* at 123–26, 130.) The prosecutor referenced these remarks in his closing statement, and returned to them in his rebuttal remarks. (Apr. 15, 2009 Tr. 541–42, ECF No. 391 (Closing); Apr. 16, 2009 Tr. 648–49, 651, 661, ECF No. 392 (Rebuttal).)

On January 5, 2018, Jenkins pled guilty to federal racketeering, robbery, obstruction of

justice, and deprivation of rights charges relating to the corruption of the Gun Trace Task Force. (*See* Plea Ag't of Wayne Jenkins, No. GLR-17-106, ECF No. 254.) *See generally United States v. Taylor*, 942 F.3d 205 (4th Cir. 2019); *Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986 (D. Md. 2019) (Hollander, J.). In light of these recent developments, Byers contends that Jenkins' testimony in his case was false, that its use by the prosecution violated his due process rights, and that his conviction on Count Eight should be vacated.[5]

"In prosecuting a criminal trial, the Due Process Clause obliges the government "not [to] knowingly use false evidence, including false testimony, to obtain a tainted conviction." *United States v. Basham*, 789 F.3d 358, 376 (4th Cir. 2015) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Accordingly, "[a] conviction acquired through the knowing use of perjured testimony by the prosecution violates due process." *Boyd v. French*, 147 F.3d 319, 329 (4th Cir. 1997). "On collateral attack, a movant alleging this sort of misconduct must demonstrate three elements: (1) that the testimony at issue was false; (2) that the prosecution knew or should have known of the falsity; and (3) that a reasonable probability exists that the false testimony may have affected the verdict." *Basham*, 789 F.3d at 376; *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004); *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994); *Thompson v. Garrison*, 516 F.2d 986, 988 (4th Cir. 1975); *accord Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) (holding that the prosecution's knowing use of false testimony violates due process when "there is any

---

[5] Unlike Byers' *Fowler* claims, his challenge to Count Eight is timely. This amendment relates back to Byers' original § 2255 filing, which predicated one ineffective assistance of counsel claim on allegations that Jenkins lied in his testimony. (*See* Pet.'s Mot. Vacate 5.) Additionally, Byers would be entitled to equitable tolling on this Count: The extent of Jenkins' corruption was not revealed until 2018, and Byers sought appellate precertification to file a subsequent § 2255 motion addressing this basis on August 20, 2018, less than one year following Jenkins' conviction for involvement in the Gun Trace Task Force. (*See* Appeal No. 18-326, ECF No. 557-1.)

reasonable likelihood that the false testimony could have affected the judgment of the jury"). "Testimony by a law enforcement officer that is knowingly false or misleading 'is imputed to the prosecution.'" *Basham*, 789 F.3d at 376 (quoting *Boyd*, 147 F.3d at 329).

Even assuming Jenkins' testimony is false,[6] Byers has made no showing that it could have reasonably affected his conviction on Count Eight. This Court, and the Fourth Circuit, have consistently found alleged perjury harmless when substantial corroborating evidence gave the jury ample grounds to convict. In *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), two defendants convicted of "an array of criminal activity, including several capital murders" related to drug trafficking activities in Richmond, Virginia alleged that a government witness was incarcerated at the time he allegedly identified them as members of a New York gang. 378 F.3d at 389, 401. The district court rejected this claim, and the Fourth Circuit affirmed, observing that the trial had featured independent evidence of their gang membership: another witness had attested to the defendants' activities in the gang and their drug sales in New Jersey, one of the defendants had threatened to "invoke the assistance of his New York associates," and various external evidence indicated that both defendants had made frequent trips to New York in order to obtain drugs. *Id.* Accordingly, even assuming the witness had testified falsely,

---

[6] Byers offers very little evidence to suggest that Jenkins committed perjury in his case. As an initial matter, Jenkins' involvement in the Gun Trace Task Force does not automatically invalidate his testimony in a given case. *See, e.g., United States v. Barronette*, 46 F.4th 177, 196 (4th Cir. 2022) ("Appellants do not offer any evidence, for example, that Broughton's arrest was tainted by any of the officers' unlawful activity. They also cite no legal authority for their assertion that we should disregard the evidence."). Byers relies solely on the evidence presented in his original Motion to Vacate (ECF No. 412), in which he names several witnesses who would have testified that Jenkins' testimony was designed to cover up the detective's working relationship with the petitioner, whereby Byers would provide Jenkins tips in exchange for information on informants and protection from investigations. As observed in that case, Jenkins openly acknowledged in his testimony that Byers offered him tips, and no evidence supports Petitioner's bald assertion that he was compensated in any way.

defendants had failed to show that "such testimony . . . could have affected the outcome of their trial." *Id.*

Likewise, in *Bramblett v. True*, 59 F. App'x 1 (4th Cir. 2003), a defendant convicted of capital murder and related charges presented an affidavit suggesting that a witness had fabricated her testimony with the assistance of a police investigator. 59 F. App'x at 14. Leaving the issue of falsity undecided, the Fourth Circuit noted that the witness statements in question were "cumulative of substantial other evidence regarding Bramblett's fixation with [the victim]—some of it from Bramblett himself, in the form of audio tapes he recorded." *Id.* at 15. Moreover, while the prosecutor placed substantial emphasis on the challenged statements during his closing arguments, the court observed that "the vast majority of the prosecutor's lengthy closing argument was devoted to a careful detailing of the circumstantial evidence against Bramblett," which "was more than sufficient to convict." *Id.* Accordingly, in light of "the extremely strong circumstantial case against Bramblett and the weakness of [the witness's] testimony," the court concluded that the defendant had suffered no prejudice on account of the alleged perjury. *Id.*

Finally, in *Wardrick v. United States*, Civ. No. PJM-99-3381, Crim. No. PJM-95-094, 2001 WL 34711501 (D. Md. Aug. 1, 2001), a defendant convicted of various drug offenses alleged "that newly discovered evidence of the perjury of an expert witness for the prosecution entitle[d] him to relief." 2001 WL 34711501, at *1. Both parties acknowledged that the witness, who testified that he was an "international narcotics expert," had "perjured himself during trial by claiming false academic credentials and mischaracterizing his past investigative experience."

17

*Id.*[7] Although the witness's perjury was "well-documented in letters submitted to this Court, in the public record, and in a separate criminal proceeding," Judge Messitte of this Court found that "the evidence against Wardrick was overwhelming" even without the tainted testimony. *Id.* at \*\*2–3. At trial, the prosecution had called twenty-two witnesses to establish the defendant's drug-trafficking activities in detail. *Id.* at \*3. Moreover, physical evidence including pager records and drug seizures corroborated the government's version of events. *Id.* Evaluating the expert's "false credentials . . . against the totality of facts in the case," this Court concluded that there was no "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* at \*3 (quoting *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994)).

Much like the defendants in these cases, Byers vastly overstates the importance of Jenkins' testimony, and fails to demonstrate that any perjury would have a material effect on his conviction under Count Eight. At trial, the Government established that Byers arranged to have Lackl murdered using a contraband cell-phone while he was incarcerated, and that

---

[7] The evidence of this perjury was substantial:

> Brown testified that he was a 'board-certified pharmacist,' having stated in his curriculum vitae that he held a degree in Pharmacy from Howard University. Neither Virginia, Maryland, nor the District of Columbia, however, have any record of Brown ever being a licensed pharmacist in those jurisdictions, nor does Howard University have any record of 'Johnny Brown, Jr.' ever receiving a degree of any kind. Wardrick's co-defendant, Groom, in a post-conviction challenge to his own conviction, has also submitted information tending to show that, contrary to his testimony at trial, Brown never traveled to Pakistan to investigate narcotics cases; that he was hired by the Metropolitan Police Department not as a narcotics consultant but as a senior police officer; and that the Metropolitan Police Department paid him $30,000 per year, not $70,000 per year.

*Id.*

Byers arranged this killing with the intent to prevent Lackl from testifying as a key witness at Byers' state trial for the prior murder of Larry Haynes. *See Byers*, 2015 WL 5450179, at *4 (reviewing evidence). The prosecution offered Jenkins' testimony as circumstantial evidence of motive—namely, that Byers was involved in the drug trade and that he was responsible for the Haynes murder. *Id.* at *5.

The prosecution offered a volume of evidence Petitioner's involvement in the Haynes shooting. In a post-arrest interview, Byers acknowledged that he had been involved in the sale of heroin, that he believed Haynes had murdered his cousins only four days prior, and that he had hidden a gun in the proximity of the murder. *Id.* at *9 (discussing links to Haynes murder). Moreover, Byers' father acknowledged that Byers was involved in the drug trade, (ECF No. 557-7), and Carlisle Coleman testified that Byers possessed and used a firearm on a previous occasion, in 2004 (ECF No. 577-12). *See* Fed. R. Evid. 404(b) (authorizing evidence of other criminal acts to show motive). Joseph Parham positively identified Byers as the shooter, only to recant his testimony after Byers placed multiple calls to his home from a contraband phone.[8] And two witnesses established that Lackl would have done the same, had he lived to testify. *See* Fed. R. Evid. 804(b)(6) (authorizing exception to hearsay rule in the event of forfeiture by wrongdoing). Melinda Lee Humes, Lackl's girlfriend, recounted that Lackl informed her he

---

[8] Joseph Parham was arrested on drug possession charges on the same day as the Haynes murder, identified Byers as the man who shot Haynes, corroborating the identification provided by Carl Lackl, and informed police that he had seen Haynes arguing with a man he knew as "Pat," who had previously been involved in the Coleman shooting. *See Byers*, 2015 WL 5450178, at **2-3, 9. Although Parham recanted this testimony and refused to cooperate in the days preceding the trial, the Government obtained and introduced evidence that he did so after Byers placed several calls to Parham's home on a second contraband cell phone found in Byers' cell. *Id.* at *22. As this Court already noted, while this recantation "was, at least superficially, exculpatory," the calls between Byers and Parham served as damaging evidence of "Petitioner's own clear—and apparently successful— intimidation of witnesses." *Id.*

had "seen a man shoot another man," and that "the man ran past him and looked at him and laughed" before "he threw the gun up on the roof." (ECF No. 577-6.) Detective Tom Martin of the Baltimore City Police Department explained that Lackl described an identical series of events in a police interview, that Lackl's depiction aligned perfectly with the firearm discovered at the scene of the crime, and that Lackl confidently identified Byers as the shooter in a photo array, corroborating Parham's identification. (ECF No. 577-8.)

Accordingly, as in *Wardrick*, *Roane*, and *Bramblett*, Petitioner has failed to demonstrate a reasonable likelihood that Jenkins' alleged perjury had any material impact on his convictions. The prosecution's case included identifications by several witnesses, physical evidence located at the crime scene,[9] a reconstruction of Lackl's testimony, and Petitioner's own statements. This evidence is far more persuasive than Jenkins' testimony regarding Petitioner's attempt to construct an alibi. Even if Jenkins lied and his testimony was entirely disregarded, the evidence against Byers was more than sufficient to establish that Byers was involved in the murder of Haynes—and that he killed Lackl with the intention to prevent him from testifying, regardless of whether he in fact murdered Haynes. *Cf. Roane*, 378 F.3d at 401 (highlighting corroborating witnesses, statements by defendants, and external evidence); *Wardrick*, 2001 WL 34711501, at *3 (finding that "the totality of [the] facts in the case" rendered perjury harmless); *Bramblett*, 59 F. App'x at 15 (observing that "the extremely strong circumstantial case against [appellant]" was "more than sufficient to convict").

---

[9] A gun was recovered on the ground in the alley adjacent to North Montford Avenue, and Detective Martin surmised that the gun had bounced off of the roof and landed on the ground. *Byers*, 649 F.3d at 202 n.1.

This evidence is particularly dispositive of Byers' challenge to Count Eight, possession of a firearm by a prohibited person—the only count of conviction predicated on the events of the Haynes murder. As relevant to this Count, Jenkins testified that Byers informed him that the man who shot Haynes threw a gun atop a rooftop as he fled the scene. This testimony is "cumulative of substantial other evidence" on the record. *Cf. Bramblett*, 59 F. App'x at 15; *Roane*, 378 F.3d at 401. Specifically, Humes and Martin each recounted that Lackl would have testified that Byers threw a gun on a rooftop, Coleman independently testified regarding Byers' possession of a gun and involvement in a prior shooting, and Byers himself admitted that he had hidden a gun near the scene of the Haynes murder. Jenkins' testimony adds little weight to this chain of evidence. Accordingly, even if Jenkins testified falsely, Byers fails to show that "a reasonable probability exists that the false testimony may have affected the verdict" on his firearm possession charge. *Basham*, 789 F.3d at 376. Byers' motion is accordingly **DENIED** as it relates to Count Eight.

## CONCLUSION

For the foregoing reasons, Petitioner's Amended Motion to Vacate Sentence (ECF Nos. 412, 453) is **DISMISSED** in part and **DENIED** in part.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a

petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or incorrect. *See Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). With respect to Byers' challenge to his conviction on Count Eight, and any supplemental challenges to his convictions on Counts One, Two, Five, Six, and Seven, reasonable jurists would not find these claims debatable, and a certificate of appealability is **DENIED** as to these claims.

With respect to Counts Three and Four, this Court concludes that a limited certificate of appealability is appropriate in this case, as Petitioner's claims under *Fowler v. United States*, 563 U.S. 668 (2011), present a debatable question regarding the sufficiency of the evidence under 18 U.S.C. § 1512(a)(1)(C). As noted above, these claims do not affect Byers' concurrent life sentences on Counts One and Two, related to the use of facilities of interstate commerce in the commission of a murder for hire, or his *consecutive* life sentences on Counts Five and Six, related to the use of a firearm in the commission of a crime of violence. Nevertheless, the resolution of the *Fowler* issue may be relevant to the number of consecutive life terms Byers is serving, and both defendants have pending motions for compassionate release. Neither Goodman nor Byers have been afforded an opportunity to appeal this Court's denial of relief under *Fowler*. *See, e.g.*, *Goodman v. United States*, Civ. No. RDB-12-2972; Crim. No. RDB-08-0056; 2015 WL 5735364, at *9 (D. Md. Sept. 8, 2015) (denying certificate of appealability). With respect to Byers' challenges to Counts Three and Four, as reasonable jurists would find these claims debatable, a certificate of appealability is **GRANTED**.

A separate order follows.

Dated: December 22, 2022

_____/s/_____
Richard D. Bennett
United States Senior District Judge